**IN THE UNITED STATES
DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADVANCED MICRO-FABRICATION EQUIPMENT INC. CHINA, | |
| 188 Taihua Road, Pudong New Area Shanghai, China 201201 | Civil Action No.  1:24-cv-2357 |
| AMEC NORTH AMERICA INC. | **COMPLAINT** |
| 800 West El Camino Real Suite 180 Mountain View, CA 94040 | |
| *Plaintiffs*, | |
| v. | |
| UNITED STATES DEPARTMENT OF DEFENSE, | |
| 1400 Defense Pentagon Washington, D.C.  20301 | |
| LLOYD J.  AUSTIN III, in his official capacity as SECRETARY OF THE UNITED STATES DEPARTMENT OF DEFENSE, | |
| 1000 Defense Pentagon Washington, D.C.  20301 | |
| LAURA D.  TAYLOR-KALE, in her official capacity as ASSISTANT SECRETARY OF DEFENSE FOR INDUSTRIAL BASE POLICY, | |
| 3050 Defense Pentagon Washington, D.C.  20301 | |
| *Defendants*. | |

Plaintiffs Advanced Micro-Fabrication Equipment Inc. China ("AMEC") and AMEC North America Inc. ("AMEC NA"), bring this action against Defendants U.S. Department of Defense (the "Department" or "DoD"), Lloyd J. Austin III, in his official capacity as Secretary of Defense, and Laura D. Taylor-Kale, in her official capacity as Assistant Secretary of Defense for Industrial Base Policy, and allege as follows:

## INTRODUCTION

1.     AMEC is a global micro-fabrication equipment company that serves customers in the semiconductor industry and adjacent high-tech sectors.  AMEC is a leader in its industry— achieving important breakthroughs in technology and productivity for the global semiconductor and semiconductor fabrication equipment industries and earning the trust of top chipmakers and other technology innovators worldwide.

2.     This action challenges the unlawful designation of AMEC, as a "Chinese military company" ("CMC") pursuant to Section 1260H(a) of the National Defense Authorization Act for Fiscal Year 2021 ("Section 1260H" and "FY2021 NDAA").[1]  The January 31, 2024 designation of AMEC as a CMC (the "Designation") has caused and will continue to cause the company serious and irreparable economic, contractual, reputational, and other harm.  The Designation was made without any legitimate justification, without any stated basis for the decision, and without any forewarning and opportunity to be heard.  Moreover, the Department has maintained the Designation despite being in possession of incontrovertible evidence contradicting the purported basis for its determination.

3.     Soon after being designated, AMEC reached out to the Department of Defense to ask for the basis of the Designation, to seek a meeting about the Designation, and to explain how

---

[1] Pub. L. 116-283 § 1260H(d)(1), 134 Stat. 3965 (Jan. 1, 2021).

the erroneous Designation was damaging its business.  AMEC also provided the Department with information that demonstrated that AMEC did not meet *any* of the statutory definitions of a CMC. AMEC further requested any information concerning the Designation through a FOIA request. For months, the Department stonewalled.

4.      In June 2024, after threats of litigation, the Department finally produced to AMEC a short report that provided a single basis for the Designation—in 2019, AMEC announced that it was issued "the Manufacturing Single Champion Product award for its semiconductor manufacturing project" by the Chinese Ministry of Industry Information and Technology ("MIIT") and the China Federation of Industrial Economics (the "Award").  This Award, according to the report, meant that AMEC was "affiliated with" MIIT and therefore a CMC.  *See* § 1260H(d)(1)(b)(i)(II).

5.      That is all the report said about why DoD determined AMEC is a CMC.  Despite purporting to contain the Department's full analysis, the report lacked the most fundamental information necessary to make a reasonable determination of AMEC's status.  For example, the report did not explain what the Award was.  It did not explain how the Award created an "affiliation" with MIIT.  It did not explain why receiving a one-time award in 2019 created an ongoing affiliation with MIIT years later in 2024.  It did not explain how this Award evidences AMEC's contribution to China's defense industrial base.  Indeed, it seems the Department did little more than look for "MIIT" in AMEC's public disclosures.

6.      As discussed further below, had the Department done *any* investigation into the Award—including consulting publicly available sources—it would have learned that the Award is merely a recognition for Chinese companies that have excelled in manufacturing a "single" product segment.  The point of the Award is to encourage other Chinese manufacturing companies to excel

in single product segments and to follow the business example of the awardees.  The Award is issued to companies in a range of manufacturing segments and has nothing to do with whether a company is contributing to the Chinese defense industrial base.  The Award does not confer any financial benefits on the companies, nor does it, in or by itself, create any sort of joint production project or other relationship with MIIT (nor does AMEC engage in any joint production projects with MIIT).

7.      Upon receiving the report, AMEC promptly responded to the Department and explained all the above.  Rather than commit to taking AMEC off the list of CMCs (the "CMC List"), the Department waited *one month* and then asked AMEC additional questions about its business—some of which had *no connection* to the Department's basis for the Designation. AMEC, again, answered these questions promptly and offered to make its CEO available to address any of the Department's concerns.  But, the Department declined the offer—stating that it already has the information needed to complete its analysis—but would not commit to removing AMEC from the CMC List.

8.      Of course, the Department has had what it has needed to complete its analysis since before the time the Designation was made.  All the necessary information about what the Award is (and is not) can be ascertained from a basic internet search and that information confirms that the Award in no way creates an "affiliation" with MIIT.  Defendants had no reasonable basis for the Designation in the first place and have no reasonable basis to willfully ignore the facts, while AMEC suffers growing and continuing harm to its business.

9.      As discussed below, the Defendants' conduct was unlawful and the Court should grant relief for five reasons.  *First*, the Defendants' facially unreasonable designation of AMEC and its failure to remove the Designation violate the Administrative Procedure Act, 5 U.S.C.

§ 706, in numerous ways.  *Second*, Defendants acted *ultra vires* and in excess of their statutory authority by designating AMEC as a CMC despite the total inapplicability to AMEC of the criteria for such designation under Section 1260H and the federal government's own pronouncements defining CMCs.  *Third*, by failing to provide Plaintiffs with notice of, or an opportunity to challenge, the basis for the Designation, Defendants have deprived Plaintiffs of their property and liberty rights without due process of law, in violation of the Fifth Amendment of the U.S. Constitution.  *Fourth*, Section 1260H—both on its face and as applied to Plaintiffs—is vague and fails to provide entities fair notice in violation of the Fifth Amendment of the U.S. Constitution. *Fifth*, Defendants' penalization of conduct that occurred prior to the enactment of Section 1260H violates the *ex post facto* clause of the U.S. Constitution.

## JURISDICTION AND VENUE

10.    The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the United States Constitution and laws of the United States, including the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

11.    The Court has authority to grant declaratory and injunctive relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.; 5 U.S.C. § 702; and the Court's inherent equitable powers.

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1), because officers or employees of agencies of the United States acting in their official capacities and agencies of the United States are defendants, and because a substantial part of the events or omissions giving rise to this action occurred in this district.

**PARTIES**

13.     Plaintiff AMEC is a publicly traded multinational company founded by several U.S. nationals in 2004.  It is currently headquartered in Shanghai, China.

14.     Plaintiff AMEC NA is incorporated in California and is wholly owned by AMEC International, a Singaporean entity that is in turn wholly owned by Advanced Micro-Fabrication Equipment Inc. China.  AMEC NA is thus AMEC's operating subsidiary in the United States, and is staffed by its own U.S.-based employees in senior executive and engineering roles relating to the sale, installation, and engineering support of AMEC's semiconductor manufacturing equipment.

15.     Defendant U.S. Department of Defense is a department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1).  On January 31, 2024, the Department of Defense published a list designating AMEC as a CMC under Section 1260H.

16.     Defendant Lloyd J. Austin III is the Secretary of Defense and the senior official at the Department of Defense.  Secretary Austin is sued in his official capacity, for conduct that occurred during his appointment.

17.     Defendant Laura D. Taylor-Kale is the Assistant Secretary of Defense for Industrial Base Policy.   In this role, she advises the Under Secretary of Defense for Acquisition and Sustainment and other senior defense leaders on all matters that pertain to industrial base resilience and innovation; small business programs; and industrial base development, industrial policy, and international engagement.   Assistant Secretary Taylor-Kale manages the process for the Department's placement of entities on the Section 1260H List and the process for the Department's

removal of entities from the CMC List.  She is sued in her official capacity, for conduct that occurred during her appointment.

## LEGAL FRAMEWORK AND BACKGROUND

**A.    Section 1260H Requires the Secretary of Defense to Identify and Publish a List of CMCs**

18.    Section 1260H of the National Defense Authorization Act for Fiscal Year 2021 directs the Secretary of Defense to identify Chinese military companies that operate directly or indirectly in the United States or any of its territories and possessions.  *See* FY2021 NDAA § 1260H(a).

19.    Section 1260H defines "Chinese military company" as any entity that is "(i)(I) directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party" or "(i)(II) identified as a military-civil fusion contributor to the Chinese defense industrial base;" and "(ii) engaged in providing commercial services, manufacturing, producing, or exporting."  *See* FY2021 NDAA § 1260H(d)(1).

20.    The term "military-civil fusion contributor" is defined to include (i) entities knowingly receiving assistance from the Government of China or the Chinese Communist Party through science and technology efforts initiated under the Chinese military industrial planning apparatus; (ii) *entities affiliated with the Chinese Ministry of Industry and Information Technology, including research partnerships and projects*; (iii) entities receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense; (iv) any entities or subsidiaries defined as a "defense enterprise" by the State Council of the People's Republic of China; (v) entities residing in or

affiliated with a military-civil fusion enterprise zone or receiving assistance from the Government of China through such enterprise zone; (vi) entities awarded with receipt of military production licenses by the Government of China, such as a Weapons and Equipment Research and Production Unit Classified Qualification Permit, Weapons and Equipment Research and Production Certificate, Weapons and Equipment Quality Management System Certificate, or Equipment Manufacturing Unit Qualification; (vii) entities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China; and (viii) any other entities the Secretary of Defense determines is appropriate.  *Id.* § 1260H(d)(2) (emphasis added).

21.     Section 1260H provides no further criteria indicating how the "military-civil fusion contributor" must "contribute to the Chinese defense industrial base" for purposes of the statute.

22.     The term "People's Liberation Army" is further defined as "the land, naval, and air military services, the People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate."  FY2021 NDAA § 1260H(d)(3).

23.     Section 1260H provides the procedures that the Secretary of Defense and the Department must follow to designate an entity as a CMC.  First, Defendants are required to, "[n]ot later than April 15, 2021, and annually thereafter," submit to the Committees on Armed Services of the Senate and the House of Representatives a list of each entity identified pursuant to Section 1260H(b)(1), "in classified and unclassified forms," and the submission shall include, as applicable, an explanation of any entities deleted from such list with respect to a prior list.  Second, "[c]oncurrent with" the submission of each list described above, the Defendants are required to publish the unclassified portion of such list in the Federal Register.  Third, the Defendants "may"

consult with the head of any appropriate Federal department or agency in making the determinations, and "shall" transmit a copy of each list submitted under subsection (b)(1) to the heads of each appropriate Federal department and agency. *Id.* § 1260H(b)-(c).

24.    Once this designation is made, the Secretary of Defense may reverse his determination that an entity is a CMC only after providing fifteen days of written notice to the Congressional defense committees. Moreover, none of the funds appropriated under the Further Consolidated Appropriations Act, 2024 (Pub. Law 118-47) can be used by the Department of Defense to facilitate removing a company from the CMC List.

### B.    Purpose of the CMC List

25.    Various legislators have stated that the CMC List furthers the twin aims of: (1) monitoring companies allegedly working with China's military and (2) preventing U.S. industry and supply-chains from both funding those companies and relying on those companies.[2]

26.    Senator Kevin Cramer, who sits on the Senate Armed Services Committee, stated publicly that the intent is to make American and international companies aware of which companies are CMCs so they will "strategically decouple"—*i.e.*, stop doing business with them.[3]

27.    Representative Andy Barr, member of the Subcommittee on National Security, International Development, and Monetary Policy, stated during a hearing with the House Foreign

---

[2] *Combatting the Generational Challenge of CCP Aggression: Hearing Before the H. Comm. on Foreign Affs.*, 118th Cong. (2023) (statement of Michael McCaul, Chairman, H. Comm. Foreign Affairs) ("these companies are military companies for the CCP, and both are listed on the entities list. If BIS continues to mindlessly greenlight sensitive technology sales, the CCP has proven they will use our own inventions against us.").

[3] Kevin Cramer, Senator Cramer Discusses Border Security, Threat of TikTok, Inflation on Fox Business, KEVIN CRAMER U.S. SENATOR FOR NORTH DAKOTA (Mar. 12, 2024), https://www.cramer.senate.gov/news/press-releases/senator-cramer-discusses-border-security-threat-of-tiktok-inflation-on-fox-business.

Affairs Committee that the purpose of the CMC List (alongside the Chinese Military Industrial Complex Companies List) is "to prevent American investors from financing entities tied to the CCP, or these Chinese military industrial complex firms that are still included in emerging growth Index funds either on U.S.  exchanges or foreign stock exchanges, or even through private equity or credit investments[.]"[4]

28.     On September 30, 2020 (three months before the enactment of the FY2021 NDAA), House Republicans published the "China Task Force Report."[5]  The report called for "[c]utting off material support of CCP military industrial base companies, including divestment from companies with ties to the CCP military."

**C.     Ramifications of Inclusion on the CMC List**

29.     Section 1260H imposes serious consequences, at both the state and federal level, for entities included on the CMC List.

30.     As described above, the CMC List is intended, at least in part, to "nam[e] and sham[e]"[6] the listed entities to put public pressure on these entities and all those who do business with them.

31.     Moreover, Section 805 of the FY2024 NDAA contains two relevant prohibitions targeting entities included on the CMC List, which will go into effect in the next two to three

---

[4] *Combatting the Generational Challenge of CCP Aggression: Hearing Before the H. Comm. on Foreign Affairs*, 118th Cong. (2023) (statement of Rep. Andy Barr).

[5] HOUSE CHINA TASK FORCE, 116TH CONG., REP. ON CHINA TASK FORCE (2020).

[6] Jordan Brunner & Emily Weinstein, *Chinese Military-Civil Fusion and Section 1260H: Congress Incorporates Defense Contributors*, LAWFARE (May 4, 2021) ("Section 1260H focuses on strengthening the 'naming and shaming' foundation laid by Section 1237[.]"), https://www.lawfaremedia.org/article/chinese-military-civil-fusion-and-section-1260h-congressincorporates- defense-contributors.

years.[7]  First, under Section 805(a)(1)(A), the Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods, services, or technology" with an entity identified on the CMC List, or an entity subject to the control of an entity identified on the CMC List.  *See* FY2024 NDAA § 805(a)(1)(A).  This prohibition takes effect on June 30, 2026.  *Id*. at § 805(b). Second, under Section 805(a)(1)(B), the Secretary of Defense may not "enter into, renew, or extend a contract for the procurement of goods or services *that include goods or services produced or developed*" by an entity identified on the CMC List, or an entity subject to the control of an entity identified on the CMC List.  *Id*. at § 805(a)(1)(B) (emphasis added).  This prohibition takes effect on June 30, 2027, *id*. at § 805(b), and would not only apply to AMEC but would also apply to AMEC NA and any entity that relies on Plaintiffs' products and/or services.

32.     Further, Section 536 of the Further Consolidated Appropriations Act of 2024 states that "no Federal funds made available to the Department of Homeland Security may be used to enter into a procurement contract, memorandum of understanding, or cooperative agreement with, or make a grant to, or provide a loan or guarantee to, any entity identified under section 1260H of the William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116–283) or any subsidiary of such entity."

33.     States have used and likely will continue to use the CMC List in their own statutes to place onerous restrictions on companies like AMEC.  For example, Utah Code 63L-13-201-02 states that entities on the CMC List are precluded from buying land in the state of Utah.

---

[7] To implement these prohibitions, Section 805 directs the Department of Defense to amend the Defense Federal Acquisition Regulation Supplement (DFARS) no later than one year after the enactment of FY2024 NDAA (i.e., by December 23, 2024) to implement prohibition (1)(A), and to amend the DFARS no later than 545 days after the enactment of FY2024 NDAA (i.e., by June 19, 2025) to implement prohibition (1)(B).  *See* FY2024 NDAA § 805(a)(4).

34.     On March 21, 2024, during a hearing of the House Foreign Affairs Committee, Under Secretary of Commerce for Industry and Security Alan Estevez noted that the Bureau of Industry and Security ("BIS") generally has no interest in issuing licenses to export items to entities on the CMC List, agreeing with the sentiments raised by a member of Congress during questioning.[8]

**D.     Defendants' Earlier CCMC List**

35.     The Department of Defense previously administered a "Communist Chinese military companies" list ("CCMC List"), under Section 1237 of the National Defense Authorization Act for Fiscal Year 1999 ("FY1999 NDAA").[9]  Under Section 1237, to put a company on the CCMC List, the Department of Defense needed to establish that a person was either "owned or controlled by" or "affiliated with" the People's Liberation Army or a ministry of the government of the People's Republic of China, or was "owned or controlled by" an entity affiliated with the defense industrial base of the People's Republic of China.  *See* Pub. L. No. 105-261, § 1237, 112 Stat. 2160 (1998).

36.     As with the CMC List, the Department of Defense did not provide any explanation or factual bases for inclusion on the CCMC List, or disclose what administrative process, if any, it followed.

---

[8] *Countering China on the World Stage: Empowering American Businesses and Denying Chinese Military Our Technology: Hearing Before the H.  Comm.  on Foreign Affs.*, 118th Cong. (2024) (statement of Alan Estevez, Sec'y Com.  for Indust. and Sec.) (confirming he was "really not interested in issuing licenses … to do business with [CMC]s."), https://foreignaffairs.house.gov/hearing/countering-china-on-the-world-stage-empowering-american-businesses-and-denying-chinese-military-our-technology/.

[9] Strom Thurmond National Defense Authorization Act for Fiscal Year 1999, Pub. L. No. 105-261 (1998).

37.     After the Department of Defense issued its fourth version of the CCMC List on January 14, 2021, several designated companies brought legal challenges in the U.S. District Court for the District of Columbia.  Those plaintiffs alleged, among other causes of action, that the designations: (1) were arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2); (2) were *ultra vires* and in excess of the Department's authority; and (3) violated the Due Process Clause of the Fifth Amendment.

38.     In two of those cases, the U.S.  District Court for the District of Columbia granted plaintiffs' motions for a preliminary injunction and motion for a temporary restraining order in early 2021.  *See Xiaomi Corp. v. Dep't of Def.*, No.  CV 21-280 (RC), 2021 WL 950144 (D.D.C. Mar. 12, 2021); *Luokung Tech. Corp. v. Dep't of Def.*, 538 F.  Supp. 3d 174 (D.D.C. 2021).[10]

39.     The Biden administration elected, on June 3, 2021, to effectively scrap the CCMC List.[11]  To replace the CCMC List, the Biden administration:  (1) established a new Chinese military-industrial complex companies sanctions regime, administered by the U.S.  Department of the Treasury's Office of Foreign Assets Control ("OFAC"), known as the Non-SDN Chinese Military-Industrial Complex Companies List ("NS-CMIC List"), and (2) established a new list— the CMC List—pursuant to Section 1260H of the National Defense Authorization Act for Fiscal Year 2021, which suffers from the same (and additional) procedural defects as the CCMC list.

---

[10] In the third case, *Gowin Semiconductor Corp., v.  U.S.  Department of Defense, et al.*, Gowin moved for voluntarily dismissal after the Department delisted it, and all other previously designated entities, pursuant to E.O. 14032. No. CV-01396 (RC), ECF No. 12 (D.D.C. June 25, 2021).

[11] E.O. 14032 of June 3, 2021, *Addressing the Threat from Securities Investments that Finance Certain Companies of the People's Republic of China*, 86. Fed. Reg. 30145.

## FACTUAL ALLEGATIONS

### A.    Plaintiffs' Business

40.    AMEC produces semiconductor manufacturing equipment, which it sells exclusively to commercial customers for use in the production of consumer electronics.  Its shares are publicly traded on the Shanghai Stock Exchange STAR Market, a stock exchange focused on science and technology companies.  AMEC's technology has never been designed for, evaluated for, or validated to military specifications.  Indeed, AMEC has enacted a range of policies and procedures—in consultation with the Department of Commerce—to ensure its technology is not used by the Chinese military downstream, including requiring signed end-user certificates from all customers confirming that the equipment will not be further transferred for military use.

41.    AMEC has a long and proven track record of complying with U.S. law and being transparent to, and cooperating closely with, the U.S.  government, including with respect to export controls and other issues of the highest significance to the semiconductor industry.

42.    AMEC was established in 2004 by a group of seventeen founders (fifteen of whom were U.S. nationals).  The company was originally incorporated in the Cayman Islands.  AMEC later established a headquarters in Shanghai, China to be closer to the majority of the world's semiconductor fabrication facilities and because it believed costs would be less—making it better able to compete in the global market.

43.    The nature of AMEC's management and operations are indistinguishable from American global technology companies.  While AMEC is headquartered in China, it is run by a diverse leadership group of predominately U.S. nationals along with individuals from Japan, South Korea, Taiwan, Singapore and Mainland China.  U.S. nationals comprise the largest segment of AMEC's leadership group.

44.     AMEC operates subsidiaries in several countries, including close U.S. allies such as Japan, South Korea, Singapore, and Taiwan.  AMEC also maintains a U.S. subsidiary, Plaintiff AMEC NA, which is based in California and responsible for marketing AMEC's products in North America.  AMEC also markets its products in Taiwan, Japan, Southeast Asia, and several European countries.  In Europe, specifically, AMEC had a long-standing relationship with a Germany-based agent/distributor.

45.     AMEC has no ties whatsoever to the Chinese military and none of its products are designed for or intended for military use of any kind.

46.     None of AMEC's board members or senior leadership are members of or are affiliated with the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party ("CMC-CCP").  AMEC receives no funding from those entities, and AMEC does not sell any products or services to those entities.

47.     AMEC, including through its U.S. subsidiary AMEC NA, has a number of U.S.-based suppliers and business partners.  Prior to the Department's decision, Plaintiffs were actively looking to engage with partners and expand their U.S. market presence as many semiconductor companies have done following enactment of the CHIPS and Science Act on August 9, 2022.  Indeed, one of the principal goals of the CHIPS and Science Act was to attract foreign semiconductor investment in the United States.  Such plans include the sale of AMEC equipment to companies building U.S. semiconductor fabrication facilities and partnerships with U.S. companies to jointly produce semiconductor manufacturing equipment.  This would *provide significant benefits to the U.S. semiconductor industry*.  As discussed below, these plans have been materially disrupted.

**B.      Defendants Designate AMEC as a CMC**

48.      To date, there have been three separate tranches of companies and entities added by the Department of Defense to the CMC List.

49.      The Department of Defense did not release on its website the first "tranche" of the CMC designations until June 3, 2021—nearly two months later than specified under Section 1260H—at which time it designated forty-seven companies (including subsidiaries) as CMCs.  The Department did not publish the forty-seven designations in the Federal Register until almost a month later, on June 28, 2021.  Over a year later, on October 5, 2022, the Department released on its website a second "tranche," designating thirteen additional companies as CMCs.  DoD did not publish the thirteen designations in the Federal Register until a year-and-a-half later on April 2, 2024, despite the specific requirement under Section 1260H(b)(2).  None of those designations included AMEC.

50.      On January 29, 2024, seven United States Senators sent a letter to Secretary Austin "to express [ ] concerns regarding the Department of Defense's failure to annually publish the names of 'Chinese military companies' operating directly or indirectly in the United States, as required by Section 1260H…."[12]  The Senators stated that it is "imperative that the Department of Defense continues to release the 'Chinese military companies' list," and requested "a briefing on why the Department of Defense failed to produce the 'Chinese military companies' list in 2023," and "an update on the process for determining how the Department of Defense develop, updates, and publishes the list."  *Id.*  Defendants, thus, did not, despite the requirement under Section

---

[12] Letter from Sen. Ted Budd, Sen. Tom Cotton, Sen. Rick Scott, Sen. Tommy Tuberville, Sen. Joni K.  Ernst, Sen. Deb Fisher, and Sen. Kevin Cramer, to Hon. Lloyd J. Austin III, Sec'y U.S. Dep't      Defense      (Jan.      29,      2024)      ("January      29      Letter"),      available      at: https://senatorkevincramer.app.box.com/s/eln4sqcmjcvzp8dzts7gfb229qkxbbwk.

1260H(b)(1), annually submit to Congress a list of each entity it has identified, along with an explanation of any entities removed from the list. That also means that the Defendants failed to follow the procedure set forth in Section 1260H(c), *i.e.*, to transmit a copy of each list submitted to Congress to the heads of each appropriate Federal department and agency.

51.     It was only *two days* after the Senators' letter—on January 31, 2024—that the Department released on its website the third "tranche" of CMC designations, which included AMEC and fifteen other companies. The January 31 designations consist of a three-page document entitled, "Entities Identified as Chinese Military Companies Operating in the United States in accordance with Section 1260H of the William M. ("Mac") Thornberry National Defense Authorization Act for Fiscal Year 2021 (Public Law 116-283)." The document lists a total of forty-six companies (not including subsidiary entities), including AMEC.

52.     When promulgating these designations, the Department of Defense did not comply with the procedures required by Section 1260H. Specifically, the Department did not "concurrently" publish the designations in the Federal Register, but instead waited over two months to do so.[13]

53.     Moreover, the announcement does not provide any other information regarding the designations of forty-six companies as CMCs, the bases for the designations, or whether the Secretary consulted with the head of any appropriate Federal department or agency in issuing the CMC List, as contemplated by Section 1260H(c).

---

[13] Further illustrating the haphazard rollout of the updated CMC List, China National Chemical Engineering Group Corporation ("CNCEC") was not noted as having been identified previously on the List, as all other previously added entries were, despite its inclusion in the second "tranche" of October 5, 2022.

54.     Defendants did not provide any notice to Plaintiffs that the Department of Defense was considering designating AMEC as a CMC prior to issuing the list on January 31, 2024. Plaintiffs first learned of the Designation when the January 31, 2024 CMC List was made public.

55.     Notwithstanding the Designation, AMEC does not meet the statutory definition of a CMC.  AMEC is not "owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party" or a "military-civil fusion contributor" that "contributes to the Chinese defense industrial base" under the statute.

### C.     AMEC Attempts to Engage with the Department

56.     Defendants did not respond to AMEC's multiple requests for a copy of the administrative record and the opportunity to meet until June 14, 2024—*four and a half months* after the Designation.  Prior to initiating this action, AMEC made two requests on February 20, 2024 and April 2, 2024 to the Department of Defense's Office of the Under Secretary for Acquisition and Sustainment to provide the administrative record.  AMEC did so to understand the bases for the Department of Defense's Designation and seek reconsideration.  In that correspondence, AMEC requested a meeting to explain the reasons its Designation was unjustified and contrary to law.

57.     After receiving no response to either attempt, AMEC sent a third letter to the Department on May 29, 2024.  AMEC sent that letter as part of a final effort to resolve the requests set out in its prior correspondence.  That letter attached a declaration from AMEC's Group Vice President and Chief Legal Officer, which stated that AMEC does not meet the statutory criteria for inclusion on the CMC List.  Additionally, AMEC attached a proposed complaint, which identified the relief sought if the Department did not engage with AMEC's requests and remove AMEC from

the CMC List.  AMEC indicated that the declaration and proposed complaint consisted of the "latest information available" to the Department and that AMEC expected to file a finalized version of the attached complaint in federal court if it received no response by June 14, 2024.

58.     Only after being threatened with litigation, and in the wake of Hesai Technology Co. Ltd.'s lawsuit related to the CMC List (filed on May 13, 2024), did the Department acknowledge AMEC's attempts to engage.  On June 13, 2024—just one day before AMEC's proposed deadline—Assistant Secretary Taylor-Kale provided a brief e-mail response to AMEC's May 29, 2024 letter.  Assistant Secretary Taylor-Kale indicated only that the Department would "consider" AMEC's letter and that her team "may be willing to discuss" the statutory bases for AMEC's inclusion on the CMC List.  Assistant Secretary Taylor-Kale's team also provided "a courtesy copy of the report detailing the rationale for including AMEC on the Section 1260H List" (the "Report").

59.     The Report "analyzes and documents the ownership or military-civil fusion status of [AMEC] . . . and only addresses the statutory provisions that apply to AMEC."

60.     The Report indicated that the Designation was based solely upon AMEC's receipt of a "Manufacturing Single Champion Products" award from MIIT and China Federation of Industrial Economics in 2019.  Without further elaboration, the Department erroneously concluded that, based upon that Award, AMEC qualified as a "military-civil fusion contributor" under Section 1260H(d)(2)(B) because it was "affiliated with the MIIT in a production project." As discussed below, that conclusion was incorrect and facially unreasonable for numerous reasons.

61.     The Report confirmed that this was the sole basis for the Designation.  The Report *did not* assert that AMEC was a CMC based on Section 1260H(d)(1)(B) (defining a "Chinese military company" as any entity that is "directly or indirectly owned, controlled, or beneficially

owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party"). Likewise, the Report *did not* assert that the Designation relied upon any other subcategories of the "military-civil fusion contributor" definition in Section 1260H(d)(2). The Report also failed to explain how AMEC contributed to the defense industrial base, as required by Section 1260H(d)(1)(B)(i)(II).

62. After evaluating the Report, AMEC promptly responded by letter on June 21, 2024. AMEC explained what the Award was and how it could not reasonably create an affiliation with MIIT. Considering the Department's erroneous and unlawful conduct, AMEC indicated that it would initiate litigation against the Department on July 5, 2024, if it was not removed from the CMC List.

63. On July 1, 2024, the Department requested an extension to July 19, 2024 to consider AMEC's letter, which AMEC accommodated.

64. On July 18, 2024, counsel for the Department e-mailed counsel for AMEC and asked for "a little more information to complete [its] analysis." Betraying that the Department did not understand what the Award was in the first place, the Department asked AMEC whether receiving the Award provides "any tax benefits, organizational benefits, subsidies, or any other types of benefits."

65. Then, going even further afield from the basis for its Designation, the Department asked for information about: (i) "any ongoing joint research or production with MIIT," (ii) any AMEC investors with affiliations to the Chinese government; and (iii) the backgrounds of all of AMEC's directors and key corporate officers.

66.     Notwithstanding the Department's apparent efforts to reverse engineer a basis for the Designation, AMEC answered the Department's questions promptly on July 25, 2024.  AMEC provided a complete response to each of the questions and offered a meeting with its CEO to answer any further questions.  None of AMEC's responses, in any way, demonstrated an affiliation with MIIT (or otherwise demonstrated that AMEC was a CMC).  Counsel for AMEC stated that AMEC would initiate litigation if the Department did not commit to removing AMEC from the CMC List by August 9, 2024.

67.     On July 30, 2024, counsel for the Department stated that DoD "believes" it has "the information needed to complete the analysis" and declined to meet with AMEC's CEO.  The Department neither committed to removing AMEC from the CMC List, nor did it provide AMEC with any timeframe for when it might revisit the decision.

68.     AMEC has not received any further communication from the Department.

69.     In parallel with its efforts to engage with Assistant Secretary Taylor-Kale and her team, AMEC also submitted a request for records relevant to its addition to the CMC List under the Freedom of Information Act ("FOIA") on March 15, 2024.  That request also asked the Department for expedited processing.  On March 28, 2024, the Department of Defense sent an interim response, assigning AMEC's request a case number and granting AMEC's request for expedited processing because of Plaintiffs imminent loss of substantial due process rights.  On April 15, 2024, AMEC received notice from the Department of Defenses' FOIA Requester Service Center that the estimated completion date was approximately three weeks from that date, or May 6, 2024.  After AMEC did not receive responsive records on May 6, 2024, AMEC contacted the Department of Defense to ask for an update regarding the status of its request.  On May 9, 2024, the Action Officer assigned to AMEC's FOIA Request indicated that she would provide an

updated estimated completion date.  Despite the Department's acknowledgement that Plaintiffs faced an imminent loss of substantial due process rights, the Department has failed to follow its own expedited processing requirements.  Indeed, AMEC has still not even received an updated estimated completion date for its request, never mind any of the actual materials responsive to the request.

70.     These efforts to engage constructively with the Department of Defense to amicably resolve this dispute are consistent with AMEC's longstanding history of compliance with U.S. policy and cooperation with the U.S.  Government—including AMEC's fourteen-year track record of transparency and dialogue with the Department of Commerce's Bureau of Industry and Security.

71.     Defendants' failure to provide Plaintiffs with timely and adequate information about its inclusion on the List is consistent with Congress' recent finding that the Department of Defense has not provided enough transparency on how it develops, updates, and publishes the CMC List.[14]

72.     Moreover, the Department has not implemented any mechanism, or promulgated any regulations, permitting a party to appeal a designation or seek delisting without resorting to litigation.

73.     As a result, Plaintiffs have no adequate available administrative remedy, and have exhausted their informal outreach efforts.

**D.     The Department's Explanation for the Designation Is Inadequate**

74.     Before even reaching the merits of the Designation, the Report's explanation for why AMEC should be designated a CMC is wholly insufficient.  This bureaucratic fig leaf

---

[14] *See*, *supra* ¶ 50 n.12, January 29 Letter at 1.

underscores that the Designation was erroneous and renders the Designation unlawful on its own. It also suggests that the Designation was rushed through as a result of pressure from Congress.

75.     The Department's Report totals just seven pages.  But, in substance, the Report says little more than: "In 2019, the MIIT and the China Federation of Industrial Economics jointly issued AMEC the Manufacturing Single Champion Product award for its semiconductor manufacturing project, which demonstrates that AMEC is affiliated with the MIIT in a production project." The Report cites only to AMEC's publicly available 2019 Annual Report for this information.  It reiterates in its conclusion that AMEC is a "military-civil fusion contributor to the Chinese defense industrial base through its affiliation with the Chinese MIIT in production project awards."

76.     The Department's basis is unreasonable on its face.  The Report lacks critical, foundational information that would be necessary to reasonably determine whether AMEC is a CMC.  The Report does not explain what the Award is, who it is awarded to, what, if any, benefits the recipients receive, or how the Award might otherwise create an affiliation with MIIT.  The Report incorrectly suggests that AMEC is engaged in a semiconductor manufacturing project with MIIT but does not, in any way, explain what alleged role MIIT has in the project.  The Report also does not even attempt to explain how receiving the Award in 2019 creates a *present* "affiliation" necessary for designation under Section 1260H(d)(2)(B).  Finally, the Report says nothing about *how* receiving the Award contributes to military-civil fusion or the Chinese defense industrial base.

77.     The Department's inadequate investigation is only confirmed by the fact that the Department asked AMEC—*six months after the Designation*—fundamental questions about whether the Award confers any benefits on the recipient.  Such an inquiry about the nature of the

Award indicates that the Department failed to undertake any due diligence prior to designating AMEC on the CMC List.

78.     The Department has previously been found to have violated the APA for virtually the same conduct in *Xiaomi*.  There, the Department similarly made a CCMC designation by reciting the criteria, pulling two facts from Xiaomi's annual report, and reaching a "blanket conclusion" that Xiaomi meets the CCMC criteria.  Just as it did here, the Department skipped "the most 'critical step' of an agency 'connecting the facts to the conclusion." *Xiaomi*, No. CV21-280 (RC), 2021 WL 950144, at *5 (quoting *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1405 (D.C. Cir. 1995)).

79.     Just as it did in *Xiaomi*, the Department (1) repeated the language of the statute, (2) cited minimal, publicly available facts, and (3) overreached to conclude that those facts map onto the language of the statute without any analysis or elaboration.  This is clearly the type of case where, "because Defendants have 'failed to state [their] reasoning . . . [the Court] can declare with confidence that the agency action was arbitrary and capricious."  *Id.* (quoting *Select Specialty Hosp.–Bloomington, Inc. v. Burwell*, 757 F.3d 308, 312 (D.C. Cir. 2014)).

        **E.      The Designation Is Contradicted by the Facts**

80.     In addition, the Designation is factually incorrect and a simple internet search would have revealed as much to the Department.

81.     The Award is the result of an MIIT effort, beginning in 2016, to promote "single champion" business models in the Chinese manufacturing industries.[15] A "single champion"

---

[15] *See, e.g.,* Wu, Chanti, and Jinjin Lin. "The Relationship Between Business Environment and Single Champion Enterprise Entrepreneurship." *Frontiers in Psychology*, Vol. 12 788053. Jan. 11, 2022, doi:10.3389/fpsyg.2021.788053.

company "focus[es] on some specific segmented product market in the manufacturing industry for a long time, possess international leading production technology or processes[,] and single occupation product leading in the world."[16]   The Award, therefore, is intended to highlight companies that represent the "elite" of the manufacturing market for a particular product. Companies are evaluated for "Single Champion" awards based on myriad factors, including market share, time in business, and product quality.[17]   Winners are announced on an annual basis.

82.     The Award is given to companies in a wide array of industries, including nylon stretch yarn,[18] LED displays,[19] manufacturing equipment,[20] and power tool switches[21] — confirming that it has nothing to do with contributing to military-civil fusion or China's defense industrial base.

83.     Neither AMEC's public announcement, nor any other public source suggests that AMEC received any financial reward or any other benefits from MIIT beyond the honorary

---

[16] *Id.*

[17] "EVE's ER battery was selected as China's single-champion product in manufacturing industry," EVE (Dec. 9, 2022), https://www.evebattery.com/en/news-1230.

[18] "Announcement of the two departments on the list of the third batch of manufacturing single campion enterprises and single champion products," MINISTRY OF INDUSTRY AND INFORMATION TECHNOLOGY OF THE PEOPLE'S REPUBLIC OF CHINA (Nov. 9, 2018), https://www.miit.gov.cn/zwgk/zcwj/wjfb/tg/art/2020/art_e1e84c9948674c238f64b64161a46d8d. html (naming other single champion products, including semi-solid tires, welding rods, optical reflective film, copper pipe, radio-controlled clock, etc.) (translated from Mandarin).

[19] "Unilumin LED Display Wins China's National Single-Champion Product in Manufacturing Industry," UNILUMIN, (Dec. 23, 2021), https://www.unilumin.com/news/company-news/unilumin-led-display-wins-chinas-national-single-champion-product-in-manufacturing-industry.html.

[20] "National Manufacturing Single Champion," HAN'S LASER (Aug. 4, 2024), https://www.hanslasermall.com/national-manufacturing-single-champion-hans-laser-smart-equipment-group/.

[21] "Defond Honored with Manufacturing Individual Champion 2023," DEFOND (Jun. 2023), https://www.defondetech.com/news/17923.

recognition.   Moreover, neither AMEC's public announcement, nor any other public source suggests that the Award creates any sort of research partnership, production project award, or research project with MIIT.   And, in fact, AMEC did not receive any such financial reward or benefit, nor did it undertake any such partnership or research project with MIIT.

84.    At bottom, the Award does not create any sort of "affiliation" with MIIT under any plausible definition of the term.   Case law in analogous circumstances confirms that the term "affiliated" should be construed narrowly, capturing only those companies, "effectively controlled by another or associated with others under common ownership or control."   *Xiaomi*, No. CV 21-280 (RC), 2021 WL 950144, at *6 (holding under a similar statute that "[t]he overwhelming weight of authority," including Department regulations, "supports this definition") (citing, *inter alia*, 32 C.F.R. § 232.3) (Defense regulation stating that an "affiliate" is "any person that controls, is controlled by, or is under common control with another person").[22]   The Report does not even attempt to demonstrate that MIIT and AMEC are "affiliated" under this definition.

85.    But even looking to the dictionary definition—as the Department has done in defending its designation of Hesai Technology Ltd.—the term "affiliated" means "closely associated with another typically in a dependent or subordinate position."[23]   AMEC's status as one

---

[22] There is good reason to apply the *Xiaomi* construction of the term affiliated here.  Section 1260H(d)(2)(B) both: (1) mirrors the language analyzed in Xiaomi under Section 1237 and (2) serves an equivalent legislative purpose of identifying Chinese entities incongruous with U.S. economic values.  *Compare* Section 1260H(d)(2)(B) *with* Section 1237(b)(4)(B)(i).

[23] Merriam-Webster.com Dictionary, "affiliated," accessed Aug.  4, 2024, https://www.merriam-webster.com/dictionary/affiliated.  *See also* Defs. Opp. to Pls Mot. for Summ. J. and Cross-Motion for Summ. J., *Hesai Tech. Co. Ltd v. U.S. Dep't of Defense*, No.  24-cv-01381, ECF No. 23 (D.D.C. July 31, 2024).

of *hundreds* of companies to have received the Award since 2016, does not come close to demonstrating a "close association."[24]

86.      Further, even if AMEC did meet the definition of a military-civil fusion contributor, which it does not, the Department must also find that AMEC "contribut[es] to the Chinese defense industrial base." Section 1260H(d)(1)(B)(i)(II).  Again, the Report does not even attempt to make this showing.  Indeed, the Award has nothing to do with "contributing to the Chinese defense industrial base." Each year, "single champions" receive the award in a range of fields with no military applications.

87.      Finally, the Award was granted *five years ago* in 2019 with additional honorees named in the years that followed.  The Award, thus, cannot evidence a *present* affiliation with MIIT, as Section 1260H(d) requires.  The Report does not even attempt to address this deficiency.  Further, the Report unlawfully sanctions conduct that wholly predates the enactment of Section 1260H.

## F.      The Designation Contravenes Congress's Legislative Intent

88.      It is clear that Congress did not intend to sweep a company like AMEC into the CMC regime.

89.      The conduct set forth in Section 1260H(d)(2)(A)-(F) falls into two categories.  The first category encompasses entities whose primary purpose is to operate as a militaristic arm of the State.  These entities are essentially extensions of the Chinese military.  *See*, *e.g.*, § 1260H(d)(2)(D) ("entities or subsidiaries defined as a 'defense enterprise' by the State Council of the People's Republic of China"), (E) ("[e]ntities residing in or affiliated with a military-civil fusion enterprise

---

[24] *See*, *supra* n.19.

zone"), (G) ("[e]ntities that advertise on national, provincial, and non-governmental military equipment procurement platforms in the People's Republic of China").

90.     The second category of entities in Section 1260H(d)(2) are those entities which, at their core, are commercial (as opposed to military) entities, but whose products can be leveraged by the Chinese military and the Chinese government has provided the entity with some form of support to leverage those products.  This includes Section 1260H(d)(2)(B).  *See* § 1260H(d)(2)(A) ("knowingly receiving assistance" from the Chinese government or Chinese Communist Party through efforts "initiated under the Chinese military industrial planning apparatus"), (B) ("affiliated with the Chinese Ministry of Industry and Information Technology"), (C) ("receiving assistance, operational direction or policy guidance from the State Administration for Science, Technology and Industry for National Defense"), (E) ("receiving assistance from the Government of China through [a military-civil fusion] enterprise zone"), (F) ("awarded with receipt of military production licenses" from the Chinese government).

91.     AMEC cannot reasonably be placed in either of those categories and therefore cannot "appropriate[ly]" be designated a military-civil fusion contributor.  AMEC is a commercial entity, which offers products and services used in the manufacturing of semiconductors.  It neither operates as an extension of the Chinese military such that the entity is effectively indiscernible from the Chinese military, nor does it in any way supply or otherwise partner with the Chinese military.  It also does not receive support from the Chinese government, in the form of research partnerships or projects, in exchange for access to any sort of dual-use technology.  The Award is clearly not evidence of such support.  Moreover, as described above, AMEC's products are not designed for or otherwise intended for military applications, and AMEC maintains a robust compliance program to ensure its products are not used for any downstream military use.

92.     In a report released by the Secretary of Defense, a "military-civil fusion contributor" was defined in a somewhat similar manner to include any entity that "connects the military and civilian sectors in a way that serves as a catalyst for innovation and economic development, yields an effective unity of effort in advancing dual-use technologies, especially those suited for 'intelligentized' warfare, and facilitates effective industrial mobilization during wartime."[25]

93.     But, again, AMEC does not meet this definition.  For the reasons described above, AMEC's semiconductor technology cannot be said to "fus[e] China's defense industrial base to its civilian technology and industrial base," and AMEC's semiconductor manufacturing equipment has not been used for "military applications or to more broadly advance military [science & technology]." *Id.*  Again, AMEC's technology is solely designed and intended for non-military uses, and AMEC's end-user certifications require that its equipment and services are *not* used for any military use downstream.  No portion of Section 1260H(d)(2) provides authority for Defendants to identify AMEC as a "military-civil fusion contributor."

**G.     Information Contradicting the Designation Has Always Been Readily Available to the Department**

94.     As illustrated above, even a cursory review of public information concerning the Award would have revealed that the Award does not create an affiliation with MIIT.  But, as confirmed by the Report and the follow-up questions posed by the Department in July 2024, the Department did little more than "Ctrl+F" a 2019 AMEC Annual Report to support its designation of AMEC.

---

[25] U.S. DEP'T OF DEFENSE, 118TH CONG., REP. ON MIL. AND SEC. DEVS. INVOLVING THE PEOPLE'S REPUBLIC OF CHINA (2023).

95.     Moreover, as described above, in June 2024, the Department received a detailed letter from counsel for AMEC explaining, as above, that AMEC is not "affiliated with MIIT" under any reasonable definition of the term.  The letter explained what the Award is, how it has nothing to do with research partnerships or projects, and how it has nothing to do with military-civil fusion. Despite having this information, the Department has refused to act.

96.     Finally, in July 2024, AMEC provided even more information concerning the Award and its business.  With this information, the Department confirmed that it has the information necessary to "complete its analysis."  Yet, it has still not removed AMEC from the CMC List despite its express obligations under Section 1260H to act on designations based on the "latest information available."

H.     **Plaintiffs Are Immediately and Irreparably Harmed as a Direct Result of the Erroneous Designation**

97.     The erroneous Designation and public association of AMEC with the Chinese military has substantially impaired the company's standing with current and potential suppliers, business partners, and customers, resulting in significant economic, contractual, and reputational harms that cannot easily be remedied.

98.     As a semiconductor manufacturing equipment company, Plaintiffs operate in an industry with a complex, global supply chain which involves suppliers, business partners, and customers located across the world.  The majority of these key suppliers, business partners, and customers are either located in the United States or otherwise subject to restrictions under U.S. laws and regulations.  Consequently, Plaintiffs' business partners are particularly sensitive to any indication that a company with which they conduct business is restricted, sanctioned, or otherwise included on a U.S. government list.  The CMC List is one such U.S. government list that many of Plaintiffs' suppliers, business partners, and customers routinely monitor and screen against.

99.     Indeed, as a direct result of the erroneous Designation, Plaintiffs' U.S. expansion efforts, which had been planned for years and were well underway, have come to a halt.  A key part of these plans was a relationship with a significant semiconductor company currently expanding its presence in the United States.  The relationship not only would have been a boon to the U.S. semiconductor manufacturing industry but also would have been highly lucrative for Plaintiffs—both financially and reputationally.  As a direct stated result of the Designation, however, AMEC's customer has ended the relationship.  Plaintiffs have and will continue to have other important relationships disrupted, as well.

100.    As described above, Section 805 of the FY2024 NDAA, which will be effective in the near future, broadly prohibits entities that supply goods and services to the Department from doing business with entities included on the CMC List.  This will likely intensify the adverse effects of the Designation on AMEC.

101.    Also, as described above, according to the Under Secretary of Commerce for Industry and Security, entities doing business with Plaintiffs may be denied licenses from the Bureau of Industry and Security, as the Under Secretary has stated that he is generally not interested in issuing such licenses.  Such entities also are restricted from doing business with the Department of Homeland Security.

102.    The erroneous Designation of AMEC as a CMC also turns Plaintiffs and their suppliers, business partners, and customers into targets of political attacks, and potentially more. Indeed, the House Select Committee on Strategic Competition between the United States and the Chinese Communist Party ("Select Committee") has already circulated letters to major financial institutions MSCI and BlackRock in July 2023 indicating that those companies' investments in entities included on the CMC List present a "red flag" and that it is "unconscionable for any U.S.

company to profit from investments that fuel the advance of America's foremost foreign adversary and facilitate human rights abuses."[26]

103.    Following suit, on February 9, 2024, just nine days after the January 31, 2024, CMC List was released, the Select Committee published a report titled, "The CCP's Investors:  How American Venture Capital Fuels the PRC Military and Human Rights Abuses."[27]  That report specifically discusses AMEC, and states that "U.S.  venture capital funds have specifically targeted and invested in PRC companies whose executives tout expertise gained in American institutions and benefited from U.S.-funded research and development."  The report also states that AMEC was designated as a "Chinese Communist [sic] military company" in January 2024.

104.    At bottom, the threat to Plaintiffs' business relationships caused by the Designation is profound and the effects are only beginning to materialize.  To remain competitive globally, Plaintiffs must be able to maintain commercial relationships with entities in the United States and those entities which do business in the United States—*i.e.*, essentially every major player in the global semiconductor manufacturing market.  This has been a pillar of Plaintiffs' business strategy since their inception as evidenced by Plaintiffs' years-long engagement with the United States Department of Commerce and careful compliance with U.S. regulations.   Without these relationships, Plaintiffs will be unable to compete in the global market.

105.    In addition, the erroneous Designation has caused, and will continue to cause, significant harm to Plaintiffs' ability to stay competitive by recruiting and retaining top talent.  As

---

[26] *"Unconscionable to Profit From Fueling China's Military" - Select Committee Launches Investigation Into BlackRock & MSCI*, SELECT COMM. ON THE CCP (Aug. 1, 2023), https://selectcommitteeontheccp.house.gov/media/press-releases/unconscionable-profit-fueling-chinas-military-select-committee-launches.

[27] SELECT COMM. ON THE STRATEGIC COMPETITION BETWEEN THE U.S. AND THE CHINESE COMMUNIST PARTY, CONG., 118TH CONG., REP. ON CCP'S INVESTORS: HOW AMERICAN VENTURE CAPITAL FUELS THE PRC MILITARY AND HUMAN RIGHTS ABUSES (2024).

a semiconductor equipment manufacturer, Plaintiffs rely on their talented engineers and professionals to develop and produce highly innovative products. The CMC designation has tarnished Plaintiffs' reputations as businesses and employers, which, consequently, adversely affects their ability to recruit and retain talented employees that are crucial to their commercial success.

## I.     AMEC Was Erroneously Added to a Similar, Now Defunct, Department of Defense CCMC List Years Earlier

106.    This is not the first time AMEC has been unfairly and unlawfully targeted by the Department of Defense based on confusion about its independence from the Chinese military.

107.    On January 14, 2021, AMEC was erroneously identified as a CCMC pursuant to Section 1237 of the National Defense Authorization Act for Fiscal Year 1999.

108.    The Department of Defense never provided an explanation, publicly or privately, for AMEC's inclusion on the CCMC List. The Department of Defense also failed to disclose what administrative process, if any, was purportedly followed to make the determination that AMEC met the definition of a CCMC.

109.    In response to its designation as a CCMC, AMEC submitted a de-listing petition to the Department of Defense on April 7, 2021. The Department of Defense never provided a substantive response to AMEC's petition, nor did it even confirm receipt of AMEC's petition.

110.    Other companies designated on the CCMC List successfully challenged their designations in federal court,[28] and in view of the evident lack of process and rigor in the Department of Defense's administration of the List, the Biden administration elected, on June 3, 2021, to effectively scrap the CCMC List altogether.

---

[28] *See Luokung*, 538 F. Supp. 3d 174; *Xiaomi*, No. CV 21-280 (RC), 2021 WL 950144.

33

111.   Yet, despite its previous inclusion on the CCMC List, the Department elected not to add AMEC to the new CMC List at the time of its creation.  Likewise, OFAC did not add AMEC to the newly created NS-CMIC List.  This is despite the fact that nineteen entities previously included on the CCMC List were simultaneously added to the new CMC and NS-CMIC Lists in June 2021, indicating a deliberate decision by the Department, and OFAC, to exclude AMEC.

112.   There have been no material changes to AMEC's business activities or corporate structure in the intervening years leading to AMEC's abrupt addition to the CMC List on January 31, 2024.

## CLAIMS FOR RELIEF

### COUNT I:  The Designation of AMEC as a CMC
### Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A)-(C)

#### (Against All Defendants)

113.   The above paragraphs are incorporated herein by reference.

114.   Each of the Defendants are subject to the requirements of the APA.

115.   Defendants' designation of AMEC as a CMC constitutes final agency action that is reviewable by this Court and "for which there is no other adequate remedy."  5 U.S.C. § 704.

116.   Plaintiff[s] have no adequate or available administrative remedy; in the alternative, any effort to obtain an administrative remedy would be futile.

117.   The APA requires a reviewing court to set aside agency action that is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law," "contrary to constitutional right," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C).

118.   In designating AMEC as a CMC, Defendants violated 5 U.S.C. § 706(2)(A)-(C) for the reasons described above, including: (a) designating AMEC as a CMC without adequate

justification and failing to support the Designation with substantial evidence; (b) failing to undertake a reasonable investigation to support the Designation; (c) designating AMEC as a CMC even though it is in no way "affiliated" with MIIT under any reasonable interpretation of the term; (d) failing to provide any articulable standard for what it means to be "affiliated" with MIIT; (e) designating AMEC as a CMC even though it does not meet the statutory requirements for designation; (f) designating AMEC as a CMC without due process in violation of the Fifth Amendment (*see infra*)*;* (g) engaging in retroactive rulemaking by subjecting AMEC to adverse legal consequences for past conduct without express Congressional authorization; and (h) designating AMEC as a CMC in violation of the *ex post facto* clause of the U.S. Constitution.

119.   Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiffs and third parties.  Plaintiffs have no adequate alternative to review under the APA.

## COUNT II:  The Designation of AMEC as a CMC
## Violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(D)

### (Against All Defendants)

120.   Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

121.   The APA requires a reviewing court to set aside agency action that is undertaken without observance of procedure required by law.  5 U.S.C. § 706(2)(D).

122.   To designate a "Chinese military company" under Section 1260H, Congress set forth specific procedures that Defendants are required to follow.   *See* FY2021 NDAA § 1260H(b)-(c); *supra* ¶ 7.  Defendants were required to:  (a) submit to Congress a list of all CMCs in both classified and unclassified forms and an explanation for any deleted entities; (b) publish the unclassified portion of the CMC List in the Federal Register; and (c) transmit a copy of the classified and unclassified CMC List to the heads of each appropriate federal department and

agency. *See* § 1260H(b)-(c). Defendants, however, did not follow any of these procedures. Because Defendants failed to follow all of the procedures detailed in Section 1260H(b) and (c), and instead, skipped the entire process and went directly to announce the names on its website, the erroneous Designation should be set aside because of Defendants' failure to observe procedure required by law.

123. Defendants conduct also violated § 706(2)(D) because: (a) Defendants failed to undertake a reasonable investigation into the basis for the Designation; (b) Defendants failed to make the requisite finding that AMEC is a "military-civil fusion contributor to the Chinese defense industrial base," (*see*, Section 1260H(d)(1)(B)(i)(II)), and (c) the Designation was contrary to Plaintiffs' procedural due process rights (*see*, Count VI, *infra*).

124. Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiff and third parties. Plaintiffs have no adequate alternative to review under the APA.

**COUNT III: The Department Violated the Administrative
Procedure Act, 5 U.S.C. § 706(2)(A), (C) Because the Department
Failed to or Has Unreasonably Delayed Removing AMEC from the CMC List**

**(Against All Defendants)**

125. Plaintiffs reallege and incorporate by reference the allegations contained in all of the preceding paragraphs.

126. The Secretary of Defense has a duty under Section 1260H(b)(3) to "make … deletions to the most recent list" of Chinese military companies "on an ongoing basis based on the latest information available."

127. That "latest information available" concerning the Award and the fact that it does not create an affiliation with MIIT can be drawn from publicly available sources and was always available to the Department (including at the time of the Designation).

128.    On February 20, 2024, April 2, 2024, May 29, 2024, June 21, 2024, July 25, 2024, AMEC provided Defendants evidence establishing that AMEC does not meet the statutory definition of a Chinese military company.  The letters constitute the "latest information available" to the Department.

129.    Despite confirming that the Department had the information it needed, Defendants have not removed AMEC from the CMC List, in violation of their statutory duty to take such action on an ongoing basis in reliance on the information available to and in the possession of the Department.

130.    Alternatively, Defendants' months-long delay in considering the "latest information available" constitutes an unreasonable delay in violation of the APA.

131.    Defendants' failure to remove AMEC from the CMC List has caused, and will continue to cause, ongoing harm to Plaintiffs.  Plaintiffs have no adequate alternative to review under the APA.

### COUNT IV:  The Designation of AMEC as a CMC
### Was *Ultra Vires*, in Excess of the Agency's Statutory Authority

### (Against All Defendants)

132.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

133.    Section 1260H sets forth a specified and exclusive procedure for the Department of Defense to exercise its statutory authority to designate an entity as a CMC.  As explained above, Defendants' designation of AMEC as a CMC exceeded the authority granted to the Department under the statute because AMEC fails to qualify for such agency designation under the criteria set forth in Section 1260H.  Moreover, Defendants failed to set forth an adequate basis for the

Designation and, upon being presented the "latest information" concerning the factual basis for the Designation, Defendants failed to remove AMEC from the CMC List.

134.    Defendants' designation of AMEC as a CMC was accordingly *ultra vires* and in excess of the Defense Department's statutory authority.

135.    Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiffs and third parties.

**COUNT V:  Section 1260H Violates the Fifth Amendment as Applied to AMEC, or, in the Alternative, on its Face**

**(Against All Defendants)**

136.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

137.    The Fifth Amendment to the U.S. Constitution provides:  "No person shall . . .  be deprived of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. V.  The Due Process Clause of the Fifth Amendment requires that parties deprived of their property receive adequate notice and an opportunity to be heard.  *Falana v. United States Dep't of the Navy, Bd. for Correction of Naval Recs.*, No. 18-5373, 2021 WL 2525664, at *1 (D.C. Cir. June 17, 2021) ("'[F]undamentals' of due process include adequate notice and a meaningful opportunity to be heard.") (citing *James Madison Ltd. ex rel. Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)); *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

138.    Plaintiff AMEC, as a foreign entity that has established substantial connections to the United States, is entitled to the protections of the due process clause.  For example, AMEC maintains a permanent presence in the United States through its U.S. subsidiary AMEC NA, employs American workers, and has substantial business relationships with U.S. entities.

139.    Plaintiffs AMEC NA is a U.S.-based corporation that is also entitled to the protections of the due process clause.

140.    In designating AMEC as a CMC, Defendants have deprived Plaintiffs of their property and liberty rights, including current and future revenue from its U.S. business partners, business relationships with U.S. suppliers, the ability to effectively operate its chosen business, and reputation and professional goodwill.

141.    Plaintiffs received no notice of the Designation before it was published on January 31, 2024, nor did it receive any explanation for the Designation, notice of any material upon which the Department or the Secretary relied, or any opportunity to respond and be heard on the designation.

142.    Indeed, the passage of the Further Consolidated Appropriations Act of 2024 impedes the Department from reexamining or otherwise giving AMEC an opportunity to respond to its designation on the CMC List because the Department is precluded from spending *any appropriated funds* toward removing entities from the CMC List.

143.    Further, Assistant Secretary Taylor-Kale's belated suggestion that Defendants "may be willing" to discuss the Designation with AMEC is too little, too late. Due process requires that AMEC be heard at a meaningful time and in a meaningful matter. AMEC has attempted to engage with Defendants for *six months*. AMEC sent four letters to the Department seeking a meeting and providing the "latest information available" regarding AMEC's business and reasons why the Designation is erroneous. AMEC's most recent communication—which explained precisely why the Department's basis for the Designation was erroneous—occurred over *one month ago* and the Department has still not even provided a firm commitment to meet or discuss the Designation with AMEC. AMEC also submitted a FOIA request—which the Department

agreed was subject to expedited processing given the threat to AMEC's due process rights—four months ago and has still not received a response.  Defendants have not provided Plaintiffs with meaningful time or a meaningful manner in which to be heard.

144.    Defendants' singling-out of AMEC has also deprived AMEC of equal protection of the laws.  AMEC's designation as a CMC violates AMEC's right to equal protection because AMEC has been unjustly treated differently from similarly situated companies.  Defendants are not empowered to cherry-pick certain companies to add to the CMC List, and has failed to add other similarly situated Chinese companies to the CMC List.  For example, there are numerous other companies presented with "Single Champion" Award who do business in the United States and have not been designated a CMC.

145.    In the alternative, Section 1260H is unconstitutional on its face because it fails to give any designated entity the opportunity to be meaningfully heard.  Indeed, the utter lack of processes afforded to AMEC to date—especially as compared to other "restricted lists," including those administered by OFAC—underscores the unlawfulness of Section 1260H's regime as a whole.  Affected companies like AMEC are provided no notice prior to being designated, the Department is precluded from spending certain appropriated money to reexamine designations, and affected companies are not provided a meaningful opportunity to provide the Department information to correct factual errors or appeal designation decisions.

146.    Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiff[s] and third parties.

### COUNT VI:  Section 1260H is Void for Vagueness as Applied to AMEC, or, in the Alternative, on its Face

### (Against All Defendants)

147.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

148.    As described above, Plaintiffs are entitled to the protections of the due process clause.

149.    The Due Process clause requires that persons or entities must be given fair notice of conduct that is forbidden or required.  If it does not, the statute is void-for-vagueness.  Among other things, this doctrine ensures that those enforcing the law do not act in an arbitrary or discriminatory way.

150.    As described above, the term "affiliated" in Section 1260H(d)(2)(B) should be construed narrowly to cover an entity with effective control over the other.  To the extent the definition of "affiliated" is afforded a broader, amorphous meaning that is left to the whims of the Secretary of Defense, as appears to have occurred here, Section 1260H(d)(2)(B) is unconstitutionally vague.

151.    In the alternative, Section 1260H is void for vagueness on its face—providing no person or entity fair notice of what conduct is proscribed and inviting arbitrary enforcement by the Department.

152.    Section 1260H(d)(1) states that the Secretary of Defense may designate any entity that is "directly or indirectly owned, controlled, or beneficially owned by, or in an official or unofficial capacity acting as an agent of or on behalf of, the People's Liberation Army or any other organization subordinate to the Central Military Commission of the Chinese Communist Party." It goes on to define People's Liberation Army as "the land, naval, and air military services, the

41

People's Armed Police, the Strategic Support Force, the Rocket Force, and any other related security element within the Government of China or the Chinese Communist Party that the Secretary determines is appropriate." *Id.* § 1260H(d)(3).

153.    Section 1260H(d)(1) and (d)(3)'s criteria for designating an entity as a CMC is vague and ambiguous.  Section 1260H(d)(1) uses terms that include "indirectly…beneficially owned by" and "[acting in an] unofficial capacity on behalf of the People's Liberation Army," which are imprecise and not subject to clear, uniform interpretation.  Compounding the ambiguity, Section 1260H(d)(3) defines People's Liberation Army in an equally imprecise manner—relying solely on a catch-all provision, which permits the Secretary of Defense to determine whether it is "appropriate" to label the entity as part of the People's Liberation Army.

154.    Section 1260H(d)(1) and (3), as written, do not provide any clear standard for determining what sort of connection an entity must have to the government or military of China to be considered a CMC.  Indeed, it is unclear from the language of that statute what relevant facts are sufficient to establish a direct or indirect connection to either the Chinese government or People's Liberation Army.

155.    Further, Section 1260H(d)(2)(H) states that the Secretary of Defense may designate as a "military-civil fusion contributor," "[a]ny other entities the Secretary determines is appropriate."

156.    As explained in Section E, Section 1260H(d)(2)(H) should be construed to limit the Secretary of Defense's discretion to identify "military-civil fusion contributors" to what Congress actually intended the term to mean.

157.    But, to the extent that the words "appropriate," "Chinese defense industrial base," and other terms are left to the Secretary of Defense's discretion, Section 1260H(d)(2)(H), as

written, gives the Secretary vague, standard-less authority to designate any entity as a "military-civil fusion contributor" and therefore does not provide any standard for determining that an entity is a "military-civil fusion contributor" in accordance with the statute.  It is unclear from the language of that statute what relevant facts are sufficient to deem a designation under this subsection "appropriate."

158.    Sections 1260H(d)(1), (d)(2)(H), and (d)(3) closely resemble laws that courts have held to be constitutionally infirm for vagueness.  Sections 1260H(d)(1), (d)(2)(H), and (d)(3) impermissibly provide the Secretary with "open-ended enforcement discretion" because they fail to contain *any* restrictive language that cabins the Secretary's ability to designate an entity as a CMC.  *See Kolender v. Lawson*, 461 U.S. 352, 358-60, (1983) (striking down a statute that contained no standard for determining how to enforce the "credible and reliable" requirement for suspect identification).

159.    Indeed, in Section 1260H(d)(1), any "standard" that appears in that subsection is rendered meaningless because each standard is immediately followed *by the inclusion of its inverse.*  As written, an entity qualifies as a CMC whether it is "directly *or indirectly*" owned by the PLA or Chinese military, or acting as an agent "in an official *or unofficial* capacity."  The effect of such language is that *any* entity with *any* connection to the PLA or Chinese military, may be designated as a CMC.  It is this "'indeterminacy'" of "'precisely [which] fact'" ties an entity to the Chinese government, which renders those provisions vague on their face.  *Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. D.C.*, 846 F.3d 391 (D.C. Cir. 2017) (quoting *United States v. Williams*, 553 U.S. 285, 306 (2008)).

160.    Section 1260H(d)(2)(H) and (d)(3) suffer from similar deficiencies.  Those provisions are unconstitutionally vague on their face because they "empower[ ]" the Secretary "to

rely on nothing more than [his] own inclinations" regarding each designation.  *See Niemotko v. Maryland*, 340 U.S. 268, 271–72 (1951).  Under those sections, the Secretary may designate an entity as a "military-civil fusion contributor" (Section 1260H(d)(2)(H)) or define the "People's Liberation Army" (Section 1260H(d)(3)) as "the Secretary determines is appropriate."  The term "appropriate" is not cabined by the presence of any restrictive language in those sections—the Secretary's determination need not even be *reasonably* appropriate.  Such an indefinite provision does not prevent the Secretary from designating those entities as he sees fit—especially where those entities, like AMEC, have already been included on the CMC List.

161.    Thus, the above-described portions of Section 1260H(d)(1), (d)(2)(H), and (d)(3) violate the Fifth Amendment because they are unlawfully vague on their face and as-applied to AMEC.

162.    Such a declaration is necessary at this time to determine the rights and obligations of the parties.

163.    Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiffs and third parties.

### COUNT VII:  The Designation of AMEC as a CMC Violates Article I, Section 9 of the U.S. Constitution: Ex Post Facto Law

### (Against All Defendants)

164.    Plaintiffs reallege and incorporate by reference the allegations contained in the preceding paragraphs.

165.    Article I, section 9, clause 3 of the U.S. Constitution provides: "No Bill of Attainder or ex post facto Law shall be passed."  U.S. Const. Art. I, § 9(3).  This provision forbids Congress from passing "'any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its

commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed[.]'"   *Collins v. Youngblood*, 497 U.S. 37, 42 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169-170 (1925)).

166.    As described above, Plaintiff AMEC, as a foreign entity that has established substantial connections to the United States, is entitled to the protections of the U.S.  Constitution. *Nat'l Council*, 251 F.3d at 203.

167.    Plaintiff AMEC NA is a U.S.-based corporation that is also entitled to the protections of the U.S.  Constitution.

168.    The Designation of AMEC as a CMC under Section 1260H violates the Constitution's prohibition on *ex post facto* laws by penalizing an honorary recognition lawful at the time of its receipt.  Defendants have acted contrary to constitutional right, power, privilege, or immunity by violating Article I, section 9, clause 3 of the U.S. Constitution.

169.    Again, the sole basis for the Designation is the *2019* Award.  As described above, the Award does not establish any ongoing relationship with MIIT and many other companies have been announced as Manufacturing Single Champions since.  The Department is thus sanctioning conduct in 2024 that was "innocent" in 2019.

170.    Defendants' unlawful acts are causing and will continue to cause irreparable harm to Plaintiff and third parties.

## REQUESTED RELIEF

WHEREFORE, Plaintiff[s] pray that this Court grant the following relief:

1.    Declare the Designation arbitrary and capricious, *ultra vires*, and otherwise unlawful and set it aside;

2.    Remand this matter to the Department of Defense with instructions to remove Plaintiffs from the CMC List;

3.      Declare that the designation of AMEC as a CMC was unconstitutional and in violation of Plaintiffs' rights under the Due Process Clause of the Fifth Amendment and Article I of the U.S. Constitution;

4.      Enjoin Defendants from taking any actions to enforce Section 1260H, including from continuing to identify AMEC as a CMC;

5.      Issue an order vacating and setting aside the designation of AMEC as a CMC, permanently enjoining Defendants from implementing or enforcing that designation, and preserving the status quo;

6.      Award Plaintiffs their costs and reasonable attorney fees; and

7.      Grant any further relief that this Court may deem just and proper.

DATED:      Washington, DC
            August 14, 2024

                                    /s/ Brian J. Fleming

                                    Brian J. Fleming (D.C. Bar No. 974889)
                                    Jennie Askew (D.C. Bar No. 1780533)
                                    STEPTOE LLP
                                    1330 Connecticut Avenue, NW
                                    Washington, DC 20036
                                    Tel: (202) 429-8158
                                    bfleming@steptoe.com
                                    jaskew@steptoe.com


                                    Michael G. Scavelli*
                                    Evan Glassman*
                                    STEPTOE LLP
                                    1114 Avenue of the Americas
                                    New York, NY 10036
                                    Tel: (212) 506-3900
                                    mscavelli@steptoe.com
                                    eglassman@steptoe.com
                                    * Pro hac vice motion to be submitted